713 A.2d 520 (1998)
313 N.J. Super. 511
Saray PEREZ, Cheryl Bailey, Kimberly Bartlett, Anna Cesareo and Soraya Arias, Plaintiffs-Appellants,[1]
v.
WYETH LABORATORIES, INC., a subsidiary of American Home Products Corporation; American Home Products Corporation; Wyeth-Ayerst Laboratories Division of American Home Products Corporation; Wyeth-Ayerst International Inc.; Wyeth-Ayerst Laboratories Company and Dow Corning France, S.A., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1998.
Decided June 12, 1998.
*521 Richard Galex for plaintiffs-appellants (Galex, Tortoreti & Tomes, Brunswick, attorneys; Mr. Galex, on the brief).
Anita Hotchkiss, Morristown, for defendants-respondents (Porzio, Bromberg & Newman, attorneys; Ms. Hotchkiss and Linda Pissott Reig, on the brief).
Before Judges DREIER, KEEFE and PAUL G. LEVY.
The opinion of the court was delivered by DREIER, P.J.A.D.
Various plaintiffs, designated as the "bellwether" parties in consolidated product liability actions, have appealed from a summary judgment determining that defendants had no duty to warn these consumers of possible adverse effects attendant upon the insertion, maintenance and removal of defendants' Norplant contraceptive medication. Judge Corodemus in her comprehensive decision of December 5, 1997, reported at 313 N.J.Super. 646, 713 A.2d 588 (Law Div.1997), traced the history of plaintiffs' complaints, the State of New Jersey law, out-of-state authority, and how our statutory and common law learned intermediary rules bear upon a prescription drug provider's duty to warn the consumer of its products. We agree with her analysis and decision to select *522 bellwether plaintiffs, as such practice of using bellwether cases is firmly established in the law. See In re Norplant Contraceptive Products Liability Litigation, 955 F.Supp. 700 (E.D.Tex.1997), in which, incidentally, Chief Judge Schell reached the same substantive result as Judge Corodemus.
While we readily affirm the summary judgment based upon the clear and scholarly opinion of Judge Corodemus, some issues nevertheless need further elaboration.
It has been argued that the Restatement (Third) of Torts: Products Liability (1998) posits an additional basis for liability to be imposed upon a manufacturer of a prescription drug for failure to warn a patient. Section 6 of the new Restatement separates defects in prescription drugs or medical devices from those in other products. Although the rules governing manufacturing defects in prescription drugs or medical devices are the same as those governing other products under § 2(b) of the Restatement, design defects and warning defects receive separate treatment. The warning defect language, contained in § 6(d), reads:
(d) A prescription drug or medical device is not reasonably safe because of inadequate instructions or warnings if reasonable instructions or warnings regarding foreseeable risks of harm are not provided to:
(1) prescribing and other health care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings; or
(2) the patient when the manufacturer knows or has reason to know that health care providers will not be in a position to reduce the risks of harm in accordance with the instructions or warnings.
Subsection (d)(1) mirrors N.J.S.A. 2A:58C-4 which defines an adequate warning as
one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, ... in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician.
The Restatement, however, adds subsection (d)(2), positing warnings being given directly to a patient "when the manufacturer knows or has reason to know that health care providers will not be in a position to reduce the risks of harm in accordance with the instructions or warnings." The Reporters have appended Comment b, suggesting the application of this section to situations where the physician or health care provider has a "diminished role as an evaluator or decision maker." In such an instance, the manufacturer would have a duty to provide direct warnings to the patient. Exceptions are further explored in Comment e. For example, in mass inoculations where health care providers are unable to supervise the administration of the drug and individually advise patients about the risks attendant upon the drug's use, the manufacturer may have a duty to provide warnings.
Despite the Reporter's suggestion of a manufacturer's duty to warn in mass inoculations, we need not decide the outcome of such a case in New Jersey, even with the more restrictive language of N.J.S.A. 2A:58C-4. By the Legislature's use of the words "the prescribing physician," we might assume that it intended this statute to have effect only where there is such a prescribing physician (or other health care professional with the power to prescribe drugs, as is discussed infra). In instances such as mass inoculations where there may be no prescribing physician for the individual patients, some other form of warning might be necessary.
The more salient question in this case is whether the Legislature intended to define an adequate warning in the area of prescription drugs as one given to physicians only. It is true that the New Jersey statute speaks only of a prescribing "physician." Are we to take this as a word of limitation limited to one licensed to practice medicine or surgery under N.J.S.A. 45:9-6, et seq.? It is clear that drugs may be prescribed by dentists (N.J.S.A. 46:6-19.5b), optometrists (N.J.S.A. 45:12-1), podiatrists (N.J.S.A. 45:5-7), *523 nurse practitioners (N.J.S.A. 45:11-49), home health care service firms (N.J.S.A. 45:11-49.1), physician's assistants (N.J.S.A. 45:9-27.16), or others similarly permitted to prescribe or administer drugs on a limited basis. It would be difficult to believe that the Legislature intended that warnings be geared only to those licensed to practice medicine and surgery, when the Legislature has authorized other health care professionals to provide a similar service. We thus assume that the Legislature intended to include within the term "physician" other such health care providers in the same manner as is stated in the Restatement.
In fact, in the case before us, plaintiff Perez had the Norplant® inserted by a nurse, Diane Brevet. As noted in the trial judge's opinion, "Nurse Brevet is certified in women's health by the National Association of Obstetricians and Gynecologists. She is authorized by law to prescribe and insert Norplant." It would be incongruous to apply different rules to the physicians and Nurse Brevet.
We specifically agree with Judge Corodemus that the language of N.J.S.A. 2A:58C-4 precludes any general relaxation of the learned intermediary doctrine governing prescription drugs to the point where the warnings would be required to be given directly to patients, either in the general area where drugs have been advertised directly to consumers, or in the specific area of contraceptive products. The American Law Institute in Comment e to the new Restatement left this area of developing law to the progress of individual cases. The Reporters' notes to Comment e chronicle the state of the law in this area and document the various calls to abandon the learned intermediary rule where manufacturers have marketed drugs directly to the public, but have inadequately warned the consumers. Apart from the mass inoculation situations noted earlier, where the answer might not be clear, it appears that in New Jersey the Legislature has effectively blocked the progress of the law to require such direct notification of consumers. This is consistent with the Legislature's expressed intent to limit the expansion of product liability law in certain areas. See Roberts v. Rich Foods, Inc., 139 N.J. 365, 374, 654 A.2d 1365 (1995), and the cases there cited.
Lest it be thought that N.J.S.A. 2A:58C-4 could be read to require direct notification of consumers, because the language merely speaks of the adequacy of the warning, not to whom the warning must be given, we look at the Senate Judiciary Committee Statement included with the legislative history of the Products Liability Act. N.J.S.A. 2A:58C-1a provides that such "committee statements that may be adopted or included in the legislative history of this act shall be consulted in the interpretation and construction of this act." That statement, which has been reproduced following N.J.S.A. 2A:58C-1 states in its relevant portion:
[A] manufacturer or seller is not liable in a warning-defect case if an adequate warning is given when the product has left the control of the manufacturer or seller.... The subsection contains a general definition of an adequate warning and a special definition for warnings that accompany prescription drugs, since, in the case of prescription drugs, the warning is owed to the physician.

We see, therefore, that the warning not only must be that which would be adequate to a prescribing physician, but also "is owed to the physician." If the warning is legislatively deemed adequate and has been given to the proper party, we cannot find a warning defect under the Products Liability Act.
Even if the New Jersey statute did not provide the limitation that it does, the learned intermediary doctrine is firmly established in New Jersey in the area of prescription drugs. It stands for the proposition that "a pharmaceutical manufacturer generally discharges its duty to warn the ultimate user of prescription drugs by supplying physicians with information about the drug's dangerous propensities." Niemiera v. Schneider, 114 N.J. 550, 559, 555 A.2d 1112 (1989). See also Torsiello v. Whitehall Labs., 165 N.J.Super. 311, 323, 398 A.2d 132 (App. Div.), certif. denied, 81 N.J. 50, 404 A.2d 1150 *524 (1979) (noting the wide acceptance of the learned intermediary doctrine in the context of prescription drug cases). Under this doctrine, the pharmaceutical manufacturer is relieved of the duty to warn patients of a drug's potential adverse side effects if adequate warnings are given to physicians. Spychala v. G.D. Searle & Co., 705 F.Supp. 1024, 1031 (D.N.J.1988); Niemiera, supra, 114 N.J. at 559, 555 A.2d 1112; New Jersey Products Liability & Toxic Torts Law, § 6:3-3 at 68-70 (Gann 1998). Thus, the treating physician, as the learned intermediary, is solely responsible for communicating to the patient the risks involved in taking the drug. 114 N.J. at 559, 555 A.2d 1112. The rationale behind this rule is that because of the complexity of prescription drugs, "the physician is in the best position to take into account the propensities of the drug and the susceptibilities of the patient, and to give a highly individualized warning to the ultimate user based on the physician's specialized knowledge." Spychala, supra, 705 F.Supp. at 1031-32.
Finally, a question was raised by plaintiffs at oral argument before us concerning whether the summary judgment entered by Judge Corodemus effectively terminated the litigation involving these plaintiffs as to all claims or merely as to their complaints concerning pain and scarring, or even whether this determination is limited to the individual "bellwether" plaintiffs selected for consideration by the trial judge. We note that in this case there was no claim against the prescribing physicians for failure to warn the particular patients of the dangers covered in the manufacturers' warnings or otherwise known to the physicians. While there may be portions of other cases for which we have not been provided the full records, it appears that in the claims before us as well as those from which these were selected to be bellwether or test cases, the only claim is against the manufacturers. Furthermore, the claim against the manufacturers has been limited to their failure to warn the patients directly, and has not included any assertion of a design or manufacturing defect in the product or a failure to provide an adequate warning to the prescribing physicians. As this is our understanding, it appears that Judge Corodemus's resolution of the bellwether cases and this affirmance thereof, effectively disposes of all of the pending claims, and not merely those asserted in the test cases. If in fact, however, there are other claims in the cases not pending before us, we do not, nor could we, adjudicate such claims, nor can we predict the effect of this decision upon them.
In sum, while there may be a sound basis for expansion of liability in this area, the matter is one both for legislative determination and for the Supreme Court's review of the learned intermediary doctrine as it has applied it in this area of the law.
As noted earlier, we have in this opinion merely supplemented Judge Corodemus's opinion to answer issues raised at oral argument or in the appellate briefs that may not have been presented to her. We have not done so by way of limitation. With these additions, we affirm the summary judgment, as stated earlier, substantially for the reasons expressed in her opinion of December 5, 1997.
NOTES
[1] The caption has been amended to show as plaintiffs the five "bellwether" individuals chosen from five consolidated cases, all against the same defendants. The other plaintiffs are: Camellia Daniels, Debra Little, Dria Moore, Melinda Rojas, Jamella Muhammad, Veda Sellers, Michelle Diaz and Sayed B. Pacha Said.